IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| GLORIA MORALES, | ) | |
| | ) | |
| Plaintiff, | ) | **CIVIL ACTION** |
| | ) | |
| v. | ) | No.  07-1066-MLB |
| | ) | |
| UNION PACIFIC RAILROAD COMPANY, et. al., | ) ) | |
| | ) | |
| Defendants. | ) ) | |

**MEMORANDUM AND ORDER**

This wrongful death action comes before the Court on plaintiff's motion to remand.  (Doc. 9.)  The motion has been fully briefed and is ripe for decision.  (Docs. 10, 14, 15.)  Plaintiff's motion is GRANTED due to this Court's lack of original subject-matter jurisdiction over the case, as explained below.

**I.   Background**[1]

Plaintiff Gloria Morales initiated a suit for wrongful death in state court on February 2, 2007, alleging that defendants Union Pacific Railroad Company (Union Pacific), Burlington Northern and Santa Fe Railway Company (BNSF), and Cornejo & Sons, Inc. are liable for the death of her husband Reyes Rivera.  (Doc. 1-2.)  This case arises from a collision between a train and vehicle at a railroad crossing in Wichita, Kansas, that resulted in the fatal injury of Mr. Rivera.  A train owned by Union Pacific struck a truck driven by the

---

[1] For purposes of this motion, the Court accepts the facts as alleged by plaintiff in her complaint and in her brief.  Defendants do not dispute them and, moreover, they are not material since this motion essentially presents a pure question of law.

deceased as he was leaving property owned by Cornejo & Sons. (Doc. 1-2 at 2.) The collision occurred at USDOT crossing # 009290R on tracks owned by BNSF. (Doc. 1-2 at 2.) The petition alleges that the defendants had actual and constructive notice of several dangerous and defective conditions present at the crossing, making the crossing locally hazardous. Plaintiff claims that defendants' failure to remedy these conditions caused the injury and death of Mr. Rivera. (Doc. 1-2.)

More specifically, plaintiff claims that the railroad companies were negligent in:

> (1) Failing to maintain and operate the crossing and the area around it in a safe and proper manner;
> (2) Failing to construct and maintain the crossing and right-of-way, including the approaches thereto, in a safe, reasonable and good manner and as prescribed by Kansas law pursuant to K.S.A. 66-227 and K.A.R. 82-5-8;
> (3) Failing to maintain adequate warning devices at the crossing to warn motorists of an oncoming train and to insure that the warning devices function appropriately;
> (4) Negligently training, instructing and testing its employees in carrying out these common law duties;
> (5) Failing to comply with the Manual on Uniform Traffic Control Devices for streets, highways and railroad grades and crossings, including the crossing in question;
> (6) Failing to take appropriate preventative measures when faced with actual and constructive notice of dangerous and defective conditions;
> (7) Failing to remedy or repair the dangerous conditions, warn of the dangerous conditions, erect warning devices to compensate for the dangerous conditions, instruct employees concerning the dangerous conditions or otherwise take reasonable steps to avoid injury to members of the motoring public;
> (8) Failing to give due and adequate warning to the motoring public as the train nears a grade crossing, including the duties set out at K.S.A. 66-2,120; and,
> (9) Failing to operate the train at a speed safe

> for the then existing conditions and be prepared to slow or stop for any known hazards.

(Doc. 10 at 2-3 (numbering added).) Though not at issue here, the petition also alleges similar common-law allegations against Cornejo & Sons for its failure to maintain, repair, warn of, and train employees concerning the dangerous conditions of the crossing. (Doc. 1-2 at 5-6.)

Union Pacific and BNSF timely filed a notice of removal in this Court pursuant to 28 U.S.C. sections 1441 and 1446. (Doc. 1 at 1.) Cornejo & Sons consented to the removal. (Doc. 1 at 1.) Defendants argue that removal is proper by invoking 28 U.S.C. section 1331, claiming that complete preemption and the substantial federal question doctrine give this Court original jurisdiction. (Doc. 1 at 2.) Plaintiff has moved to remand the action on the basis that the complaint, on its face, makes no claims under federal law.

**II. Discussion**

### A. Standard of Review

Jurisdiction of the federal courts is limited. Without jurisdiction, a federal court does not have the power to hear and decide a claim. Thus, a federal court must always stand prepared to review its own jurisdiction. Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 583-84, 119 S. Ct. 1563 (1999). With regard to removal jurisdiction, a federal court must remand the case to state court "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c) (2006). It is the burden of the party invoking federal jurisdiction to prove jurisdiction exists. Merida Delgado v. Gonzales, 428 F.3d 916, 919 (10th Cir. 2005). There is a

presumption against removal jurisdiction, see Laughlin v. Kmart, 50 F.3d 871, 873 (10th Cir. 1995), and all doubts about federal jurisdiction should be resolved in favor of remand, see Schmeling v. NORDAM, 97 F.3d 1336, 1341 (10th Cir. 1996).

Congress has the power to set the outer limits of federal jurisdiction. The federal removal statute provides, in pertinent part, that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a) (2006). For a defendant to properly remove a claim from state court to federal court, then, the claim must be one that could have originally been brought in federal court. See Caterpillar, Inc. V. Williams, 482 U.S. 386, 392, 107 S. Ct. 2425 (1987); Hunt v. Lamb 427 F.3d 725, 726 (10th Cir. 2005). Without original federal jurisdiction over the claim, removal to a federal court is improper.

The primary bases for original jurisdiction are federal question jurisdiction and diversity of citizenship. Federal question jurisdiction exists in "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331 (2006). Under 28 U.S.C. section 1332, a federal court has original jurisdiction over all civil actions where there is complete diversity of citizenship and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332 (2006). When a federal court has original jurisdiction over any civil action, the court may also

exercise supplemental jurisdiction over related claims.  28 U.S.C. § 1367(a) (2006).

Defendants have removed to this Court solely on the basis of federal question jurisdiction.  Though plaintiff's complaint does not allege any violations of federal law on its face, defendants argue that complete preemption or, alternatively, the substantial federal question doctrine provide grounds for federal question jurisdiction.

### B. Complete Preemption

Defendants first argue that federal law completely preempts several of plaintiff's state-law claims.  Complete preemption is a narrow exception to the well-pleaded complaint rule, which normally guides this Court in determining when a claim arises under federal law pursuant to 28 U.S.C. section 1331.  Caterpillar Inc. v. Williams, 482 U.S. 386, 392, 107 S. Ct. 2425 (1987); Turgeau v. Admin. Review Bd., 446 F.3d 1052, 1060 (10th Cir. 2006).  Under the well-pleaded complaint rule, "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint."  Caterpillar, 482 U.S. at 392.

It is the plaintiff's complaint, and only the plaintiff's complaint, that establishes whether or not a federal court has jurisdiction over the case.  Neither anticipation nor assertion of a federal issue as a defense creates federal jurisdiction. Schmeling v. NORDAM, 97 F.3d 1336, 1339 (10th Cir. 1996).  The plaintiff, as "master of the claim," may choose to avoid federal jurisdiction by only claiming state causes of action in a complaint even when a federal cause of action is available.  Id. (quoting

Caterpillar, 482 U.S. at 392).

As an exception to the well-pleaded complaint rule, complete preemption of a plaintiff's state-law claim by federal law does create a federal claim on the face of the complaint.  When a federal law "so completely pre-empt[s] a particular area [of law,]... any civil complaint raising this select group of claims is necessarily federal in character."  Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 63-64, 107 S. Ct. 1542 (1987).  A defendant may properly remove a plaintiff's completely preempted state-law claim to federal court.  The Supreme Court has only found three categories of cases where a federal statute completely preempts state law: certain causes of action under the Employee Retirement Income Security Act of 1974, see Metro. Life, 481 U.S. at 66-67; the Labor Management Relations Act, see Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists & Aerospace Workers, 390 U.S. 557, 559-60, 88 S. Ct. 1235 (1968); and the National Bank Act, see Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 10-11, 123 S. Ct. 2058 (2003).[2]

A two-prong test determines when Congress has intended for a federal law to completely preempt state law.  First, the federal law must preempt state law "to some degree."  Schmeling, 97 F.3d at 1342.  Courts often refer to this first prong as "ordinary" preemption, which is normally a defense and not enough alone to confer removal jurisdiction under the doctrine of "complete"

---

[2] The Supreme Court has also found federal treaties with Indian tribes to completely preempt state law with regard to land claims. Oneida Indian Nation of N.Y. v. Oneida County, N.Y., 414 U.S. 661, 681-82, 94 S. Ct. 772 (1974).

preemption.  See id.; Colbert v. Union Pac. R.R. Co., 2007 WL 129971, *2 (D. Kan. 2007).  Second, the federal law must "substitute[] a federal cause of action for the state cause of action."  Schmeling, 97 F.3d at 1342.  The satisfaction of both prongs demonstrates the intent of Congress, the "touchstone" of federal removal jurisdiction, to create a federal law that completely preempts a state law.  Id. at 1342 (quoting Metro. Life, 481 U.S. at 66).

Under the first part of the complete preemption test, a federal statute must "ordinarily" preempt state law in some manner.  Because federal courts are generally reluctant to infringe on matters of law normally left to the states, preemption must be the "the clear and manifest purpose of Congress".  CSX Transp., Inc. v. Easterwood, 507 U.S. 658, 664, 113 S. Ct. 1732 (1993) (quoting Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230, 67 S. Ct. 1146 (1947)).  In interpreting any preemptive purpose of a federal law, a court must look directly to the text and structure of the statute at issue.  For example, the inclusion of an express preemption clause in a federal statute clearly indicates Congress' intent that the federal law preempt similar state laws.  Id.  However, the inclusion of a savings clause with the preemption clause "counsels against a conclusion that the purpose behind the [federal statute] was to replicate the 'unique preemptive force'" of the few statues found to completely preempt state law.  Blab T.V. of Mobile, Inc. v. Comcast Cable Commc'ns, Inc., 182 F.3d 851, 857-58 (11th Cir. 1999) (citing Metro. Life, 481 U.S. at 65).  It is the plain language of the federal statute that determines how and to what

extent a federal law may preempt state law.

The second prong of the complete preemption test requires that Congress clearly substitute a federal cause of action for a state cause of action. The preempting statute must not only create a federal cause of action, but it must demonstrate that Congress intended for the scheme to "provide the exclusive cause of action for the claim asserted and also set forth procedures and remedies governing that cause of action." Beneficial, 539 U.S. at 8. Absent evidence that clearly indicates Congress' intent to wholly replace a state cause of action, simply providing an alternative federal cause of action in a federal statute does not completely preempt a state cause of action.

The type of remedy available to a plaintiff under the federal cause of action is not of concern in complete preemption analysis. As an indication of congressional intent to provide an exclusive federal cause of action, the federal remedial scheme should generally allow a plaintiff to recharacterize a private state cause of action as a private federal cause of action. See Turgeau, 446 F.3d at 1061. However, a federal cause of action does not have to provide the same remedies as the state cause of action. Schmeling, 97 F.3d at 1343. In fact, a plaintiff may not be able to recharacterize a state claim as a federal claim, leaving her without a remedy. See Coldesina v. Estate of Simper, 407 F.3d 1126, 1139 (10th Cir. 2005). What matters in complete preemption analysis is that Congress has provided a civil remedial scheme as part of the preempting statute clearly intended to displace all state causes of action, including private ones, for the same claim.

Defendants argue that the United States Supreme Court has dispensed with the need for a federal cause of action in complete preemption analysis. (Doc. 14 at 10.) In <u>Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing</u>, the Supreme Court determined that creation of a federal cause of action indicated Congress' intent to allow removal jurisdiction, but alone it is not dispositive on the issue of removal jurisdiction. <u>Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.</u>, 545 U.S. 308, 318, 125 S. Ct. 2363 (2005). The Tenth Circuit has since specifically adopted and applied the ruling from <u>Grable</u>. <u>See</u> <u>Nicodemus v. Union Pac. Corp.</u>, 440 F.3d 1227 (10th Cir. 2006).

<u>Grable</u> and <u>Nicodemus</u> are distinguishable from the present case, however, as both courts solely dealt with the substantial federal question doctrine. <u>See</u> <u>Grable</u>, 545 U.S. at 310 (narrowing the issue presented in the case to whether a federal court could exercise jurisdiction over a claim implicating federal tax law because the claim raised a federal question); <u>Nicodemus</u>, 440 F.3d at 1232 n. 4 (stating that complete preemption was not implicated in the case). Substantial federal question analysis is distinctly different from complete preemption analysis. (<u>See</u> discussion <u>infra</u> Part II.C.) Because the Supreme Court still requires a federal cause of action to replace a state cause of action as an element of complete preemption, <u>Schmeling v. NORDAM</u> still provides an appropriate framework for preemptive analysis in this circuit. <u>See</u> <u>Colbert</u>, 2007 WL 129971 at *5 (holding that the decision in <u>Nicodemus</u> does not alter the complete preemption analysis).

Congress established the Federal Railroad Safety Act of 1970

-9-

(FRSA) as a uniform means of "promot[ing] safety in every area of railroad operations and reduc[ing] railroad-related accidents and incidents." 49 U.S.C. § 20101 (2006). To further these ends, the FRSA vests the power to issue new safety regulations applicable to all railroads in the Secretary of Transportation. See 49 U.S.C. § 20103(a) (2006). In order to create a uniform railroad safety system, the regulations issued by the Secretary of Transportation must logically preempt state law.

The FRSA does contain an express preemption clause, though separate savings clauses precede and follow the preemption language. The FRSA specifically provides that "[a] State may adopt or continue in force a law, regulation, or order related to railroad safety or security until the Secretary of Transportation... prescribes a regulation or issues an order covering the subject matter of the State requirement." 49 U.S.C. § 20106 (2006). It is coverage of the same subject matter, then, that defines preemption under the FRSA.

Additionally, once the Secretary of Transportation has created a regulation covering the same subject matter as a state law, "[a] State may adopt or continue in force an additional or more stringent law, regulation, or order related to railroad safety or security when the law, regulation, or order--

> (1) is necessary to eliminate or reduce an essentially local safety or security hazard;
> (2) is not incompatible with a law, regulation, or order of the United States Government; and
> (3) does not unreasonably burden interstate commerce."

Id. Though not mentioned or discussed in defendants' response to

the motion for remand, this second savings clause is critical to complete preemption analysis with regard to the FRSA.  Whether a federal regulation promulgated under the FRSA preempts state law depends on whether the federal law covers the same subject matter as the state law and, if so, on whether the state law may be excepted from preemption under the second savings clause.

Regarding the creation of a federal cause of action, the FRSA does provide an enforcement provision to the Secretary of Transportation.  See 49 U.S.C. § 20112 (2006) (allowing, at the request of the Secretary of Transportation, the Attorney General to sue in federal court to enforce a railroad safety regulation).  However, there is no indication that Congress intended for this enforcement provision to displace any state cause of action or private remedy available under state law.  The FRSA simply grants jurisdiction to federal courts to hear claims initiated at the request of the Secretary of Transportation; all other causes of action initiated against the railroads are still left to state court jurisdiction.

Defendants direct this Court to Lundeen v. Canadian Pacific Railway Company and its progeny in the Eighth Circuit as support for the argument that the FRSA does completely preempt state law claims covered by FRSA regulations.  Lundeen v. Canadian Pac. Ry. Co., 447 F.3d 606 (8th Cir. 2006).  In Lundeen, the Eighth Circuit held that FRSA regulations providing minimum track inspection requirements completely preempted state laws covering the same subject matter.  Id. at 614-15.  The complete preemption test used by the court required that the court first look to the FRSA

-11-

regulations allegedly covering the same subject matter as the state law and then to "any given regulation's solicitude for state law." Id. at 613. In analyzing each separate regulation, the court interpreted the absence of a savings clause within a particular regulation as meaning that the Secretary of Transportation did not mean to preserve a state cause of action. Id. Because the track inspection regulations analyzed by the court did not contain savings clauses, then the effect of the regulations was complete preemption.

This Court does not find Lundeen persuasive in its complete preemption analysis of the FRSA. Complete preemption analysis in the Tenth Circuit, as discussed above, requires the court to look at the entire federal statutory scheme to determine Congress' preemptive intent; the Eighth Circuit test only requires the court to look at each regulation individually to determine if the regulation completely preempts state law or provides for any non-federal cause of action. The complete preemption test adopted by the Eighth Circuit significantly differs from the approach adopted by this circuit and others. See Lontz v. Tharp, 413 F.3d 435, 441 (4th Cir. 2005); Sullivan v. Am. Airlines, Inc., 424 F.3d 267, 275-76 (2d Cir. 2005); Rogers v. Tyson Foods, Inc., 308 F.3d 785, 788 (7th Cir. 2002); Johnson v. Baylor Univ., 214 F.3d 630, 632 (5th Cir. 2000) (requiring that (1) the statute contains a civil enforcement provision that creates a cause of action that both replaces and protects the analogous area of state law; (2) there is a specific jurisdictional grant to the federal courts for enforcement of the right; and (3) there is a clear Congressional

intent that claims brought under the federal law be removable); Strong v. Telectronics Pacing Sys., Inc., 78 F.3d 256, 260 (6th Cir. 1996); Goepel v. Nat'l Postal Mail Handlers Union, 36 F.3d 306, 311 (3d Cir. 1994).  The weight of authority supports the continued use of complete preemption analysis used in the Tenth Circuit and by this Court, making defendants' reliance on Lundeen and its progeny misplaced.

Defendants specifically claim that remand is improper because federal law preempts three of plaintiff's state-law claims: failure to train, instruct, and test employees of the operations department, failure to operate the train at a speed safe for the then existing conditions, and failure to sound an adequate warning. (Doc. 14 at 8-10.)  Plaintiff disagrees with defendants' characterization of the claims, arguing that the crossing where the accident occurred presents a specific local safety hazard.  (Doc. 15 at 5.)  While such differences may matter in preemption analysis because of the FRSA's second savings clause, this Court does not have the jurisdiction to individually address whether federal regulation preempts each claim.  Without the provision of an exclusive federal remedy in the FRSA, there is no complete preemption to give this Court subject-matter jurisdiction.

**C. Substantial Federal Question Doctrine**

Defendants argue in the alternative that removal is appropriate under the substantial federal question doctrine, which converts plaintiff's state-law claims into federal claims.  Though a long-established exception to the well-pleaded complaint rule, federal courts only sparingly apply the substantial federal

-13-

question doctrine.  See Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg., 545 U.S. 307, 312, 125 S. Ct. 2363 (2005).  The doctrine allows a federal forum to hear state-law claims that give rise to significant federal issues.  No matter how carefully a plaintiff drafts a complaint under state law, a defendant may remove a claim that requires the "experience, solicitude, and hope of uniformity that a federal forum offers on federal issues" implicated by the claim.  Id.

The Supreme Court has refused to provide a bright-line rule for applying the substantial federal question doctrine.  Instead, the Court has held that "determinations about federal jurisdiction require sensitive judgments about congressional intent, judicial power, and the federal system."  Merrell Dow Pharm. Inc. v. Thompson, 478 U.S. 804, 810, 106 S. Ct. 3229 (1986).  In balancing these concerns, the Supreme Court determined that "the question [under the doctrine] is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities."  Grable, 545 U.S. at 314; see also Nicodemus, 440 F.3d at 1233.  The claim must raise a significant federal issue best resolved in a federal forum, and the removal of the claim to federal court must not significantly disrupt the division of judicial duties between federal and state courts.

Under this two-part balancing test, the first inquiry is whether the state-law claim raises a significant federal issue.  A disputed and substantial federal issue requires more than mere

-14-

application of the federal law.  Grable, 545 U.S. at 313.  The issue must "substantially involve a dispute or controversy respecting the validity, construction or effect of federal law." Id. (citing Shulthis v. McDougal, 225 U.S. 561, 569, 32 S. Ct. 704 (1912)).  The dispute between plaintiff and defendant must bring into question the very meaning of the federal law implicated.

The second inquiry is whether allowing a federal court to resolve the issue would upset the federal-state balance of judicial power.  Congress establishes the dividing line between federal and state court duties by defining the limits of federal jurisdiction. Id. at 313-14.  Any exercise of federal jurisdiction over an implied federal issue must be "consistent with congressional judgment about the sound division of labor between state and federal courts."  Id. at 313.  Even if a state-law claim raises a substantial federal issue, a federal court must consider whether opening the federal forum to plaintiff's state-law claims will significantly alter the limits of federal jurisdiction.  See Nicodemus, 440 F.3d at 1237 (holding that a federal court may exercise jurisdiction over an embedded substantial federal claim that has a "microscopic" effect on the judicial division of labor).

The present case does not warrant federal jurisdiction under the substantial federal question doctrine outlined in Grable. Breaking the Grable test into three components, defendants first argue that plaintiff's claims raise disputed issues of federal law because resolution of plaintiff's claims require the interpretation and application of several FRSA regulations.  However, it is not plaintiff's claims that give rise to a disputed federal issue;

plaintiff only claims violations of state law in her complaint. The only disputed issue, arising by means of a defense as discussed above, is whether federal law preempts state law under ordinary preemption analysis.  <u>See</u> discussion <u>supra</u> Part II.B.  At most, a state court must decide whether defendants have a valid defense by applying the preemption and savings clauses in 49 U.S.C. section 20106 to plaintiff's claims.  If the court does find the defendants to have a valid defense, then the court shall drop the preempted claim or claims from the case.  Beyond applying 49 U.S.C. section 20106 to each separate claim, there is no further need to interpret or construct federal law to resolve the disputed issue.

    Defendants next argue that uniform application of the FRSA and the regulations issued by the Secretary of Transportation make the federal issues raised substantial.  Again, however, no significant issue of federal law arises from plaintiff's complaint.  Contrary to defendants' statement of the law, states are not outright "prohibited" from imposing their own railroad safety standards even after the Secretary of Transportation issues a regulation covering the same subject matter as state law.  Thus, plaintiff's characterization of her claims under state law should not and does not automatically implicate federal law and the FRSA.  Defendants have the burden of demonstrating a conflict of law between a specific federal regulation and a state law claim, raising a federal issue from plaintiff's complaint.  Nowhere in their response to plaintiff's motion to remand do defendants point to a specific federal law or regulation that conflicts with plaintiff's state-law claims.  In the absence of a conflict of law, "lack of

uniform application" cannot be a substantial issue.

The Supreme Court addressed a similar uniformity argument in Merrell Dow Pharmaceuticals Inc. v. Thompson and determined that a need for uniform application of the law does not make an embedded federal claim substantial. Merrell, 478 U.S. at 816. The Supreme Court specifically noted that uniformity in the application of federal law can still be achieved even without original jurisdiction over an embedded federal issue because the federal judicial system "retains power to review the decision of a federal issue in a state cause of action." Id. Denying a federal forum for resolution of the federal issues defensively raised here will not result in a fragmented, state-by-state application of the FRSA, as defendants fear.

Lastly, defendants argue that the intent of Congress to allow federal courts to hear claims implicating railroad safety issues arises from the FRSA's stated purpose to unify railroad safety regulation. Defendants' argument would seem to indicate that a federal court should hear any state claim implicating a railroad safety issue because it may affect the uniform application of the FRSA. There is no indication in the FRSA that Congress intended federal jurisdiction to reach so far.

The challenged claims appear analogous to the "garden variety state tort" claims that the Supreme Court cautioned against welcoming into federal court. Grable, 545 U.S. at 318-19. The Court held that allowing a federal court to exercise jurisdiction "over state claims resting on federal... statutory violations would... herald[] a potentially enormous shift of traditionally

-17-

state cases into federal courts." Id. at 319.  Removal of state tort cases to federal court based on an implicated violation of a federal law would become a common practice; a practice that would expand the jurisdiction of the federal courts well beyond what Congress has explicitly provided.

### III. CONCLUSION

Because this Court lacks original subject matter jurisdiction under either the complete preemption or substantial federal question doctrines, plaintiff's motion to remand (Doc. 9)is GRANTED.  The case is remanded forthwith to the District Court of Sedgwick County, Kansas, for further proceedings.

IT IS SO ORDERED.

Dated this   16th   day of July 2007, at Wichita, Kansas.

s/ Monti Belot

Monti L. Belot
UNITED STATES DISTRICT JUDGE